IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARTIN JENNINGS CURRY, D.C.,

  Plaintiff

    v.                          CIVIL No. 11-cv-2069-JKB

TRUSTMARK INSURANCE
COMPANY, *et al.*,

  Defendants

## MEMORANDUM

Martin Jennings Curry ("Plaintiff") brought this suit against Trustmark Insurance Company and Continental Assurance Company ("Defendants") alleging breach of contract. Now pending before the Court is Defendants' motion for summary judgment (ECF No. 52). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, Defendants motion for summary judgment will be GRANTED.

### I.    BACKGROUND

Plaintiff is a chiropractor who "was injured on November 25, 2003 while performing chiropractic services on a patient in Salisbury, Maryland." (Compl. ¶ 6, ECF No. 1.) In 1989, Plaintiff purchased a disability insurance policy (the "Policy") from Defendants.[1] The relevant provisions of the Policy are as follows:

---

[1] Plaintiff alleges that he purchased the insurance policy from Continental Assurance Company, which was later "assumed" by Trustmark Insurance Company. (Compl. ¶ 9.) In light of the Court's rulings on Defendants' motions for summary judgment, *infra*, the details of the relationship between the Defendants are not material to the resolution of this case.

1

## PART 1: DEFINITIONS

…

"Total Disability" means that because of Injury or Sickness:
(1) You cannot perform the substantial and material duties of Your regular occupation . . . ; and
(2) You are receiving care by a Physician which is appropriate for the condition causing Your Disability. You do not need to be under a Physician's care on a regular basis if You can show that further recovery is not expected.

…

## PART 4: CLAIMS
### WRITTEN NOTICE OF CLAIM

Written notice of claim must be given to Us within 30 days after a covered loss starts, or as soon as reasonably possible…

### CLAIMS FORMS

After We receive the written notice of claim, We will send You Our proof of loss forms within 15 days. If We do not, You will meet the Written Proof of Loss requirements if You send Us, within the time set forth below, a written statement of the nature and extent of Your loss.

### WRITTEN PROOF OF LOSS

Written proof of loss must be sent to Us within 90 days after the end of a period for which You are claiming benefits. If that is not reasonably possible, Your claim will not be affected. But unless You are legally incapacitated, written proof must be given within 1 year.

### TIME OF PAYMENT OF CLAIMS

After We receive written proof of loss We will immediately pay benefits due. At the end of each 30 days thereafter, further benefits due will be paid subject to continuing proof of loss.

…

### PHYSICAL EXAMINATIONS

At Our expense, We can have a Physician examine You as often as reasonably necessary during Your claim.

(Policy at 4, 6; ECF No. 1-1.)

On November 25, 2003, Plaintiff injured his lower back while performing a chiropractic adjustment on a patient. (Pl. Br. at 7, ECF No. 59.) As a result of the injury, Plaintiff underwent surgery, after which he was unable to work. (*Id.*) On December 31, 2003, Plaintiff submitted a claim form to Defendants. (*Id.*) Defendants began paying benefits under the Policy to Plaintiff shortly thereafter. From 2004 through mid-2007, the parties exchanged correspondence in which Defendants requested continuing proof of Plaintiff's disability and Plaintiff provided certain information concerning his physical condition and loss of income.

"Defendants paid benefits through July 2007, but suspended making monthly payments thereafter." (*Id.* at 15.) The parties continued to exchange correspondence concerning Plaintiff's physical condition and proof of continuing loss through the end of 2007. On January 9, 2008, Plaintiff wrote a letter to the President of Trustmark complaining that Defendants were "abandoning the [] commitment represented by the [P]olicy," and that benefits had been "recently discontinued." (Pl. Br. Ex. 37.) On April 17, 2008, Plaintiff wrote Defendants another letter stating that Defendants had "delayed and ultimately denied [his] benefits." (*Id.* Ex. 45.)

On April 22, 2008, Defendants wrote to Plaintiff and requested an independent medical evaluation at Defendants' expense. In the same letter, Defendants informed Plaintiff that they would pay his benefits under the Policy through September 25, 2007. On May 28, 2008, Plaintiff "requested that his benefits be paid up to date before an [independent medical evaluation] was performed." (Pl. Br. at 19.) Defendants ignored that request. (*Id.*) "Because Defendants were nine months in arrears in benefits payments, [Plaintiff] did not attend the [independent medical examination]." (*Id.*) On July 31, 2008, Defendants informed Plaintiff that his claim had not yet been denied, but Defendants were "unable to accept continued liability" at

3

that time. (*Id.*) On August 26, 2008, Plaintiff renewed "his offer to undergo an IME as soon as Defendants paid the past due benefit and 'within the context of a current and active claim.'" (*Id.*) In a letter dated September 29, 2008, Defendants "clos[ed] [Plaintiff's] claim with benefits provided through September 25, 2007," and informed him of his right to submit an appeal. (*Id.* Ex. 53.)

Plaintiff filed his complaint on July 27, 2011. Defendants filed their motion for summary judgment on December 14, 2012. Plaintiff filed his response in opposition to the motion on February 5, 2013. Defendants filed their reply brief on March 14, 2013.

## II. LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact" and that he is "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If a party carries this burden, then the court will award summary judgment unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). To carry these respective burdens, each party must support its assertions by citing specific evidence from the record. FED. R. CIV. P. 56(c)(1)(A). The court will assess the merits of the motion, and any responses, viewing all facts and reasonable inferences in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## III. ANALYSIS

### A. Statute of Limitations

Plaintiff filed his complaint with the Court on July 27, 2011. Under Maryland law, the limitations period for a breach of contract claim is three years. MD. CODE ANN. CTS. & JUD. PROC. § 5-101. The statute of limitations ordinarily "begins to 'accrue' on the date of the

wrong." *Murphy v. Merzbacher*, 697 A.2d 861, 864 (Md. 1997). "The 'discovery rule' operates as an exception to the accrual rule when a plaintiff does not know, or could not through the exercise of reasonable diligence know" of a breach of contract. *Kumar v. Dhanda*, 17 A.3d 744, 748 n.2 (Md. Ct. Spec. App. 2011) (citing *Poffenberger v. Risser*, 431 A.2d 677 (Md. 1981)). Therefore, any breaches of the Policy that accrued and could have been discovered by Plaintiff through the exercise of reasonable diligence before July 27, 2008, and were not otherwise tolled, are barred by the statute of limitations.

Under the Policy, Plaintiff was required to submit a written notice of claim to Defendants within 30 days of the beginning of a period of disability. (*See* Policy at 6.) Once he did that, Plaintiff was required to submit written proof of loss "within 90 days after the end of a period for which [Plaintiff claimed] benefits." (*Id.*) At that point, Defendants were required to "immediately pay benefits due." (*Id.*) The Policy dictates that "[a]t the end of each 30 days thereafter, further benefits due will be paid subject to continuing proof of loss." (*Id.*) The most natural interpretation of this contractual language is that after Plaintiff submitted a written notice of claim and written proof of loss, and assuming Plaintiff provided "continuing proof of loss," Defendants had independent obligations to pay benefits to Plaintiff every 30 days for the duration of his disability. In the event that Defendants failed to make one of those payments, the cause of action accrued when Plaintiff became aware of that failure.[2]

---

[2] The parties have not identified any Maryland state court decisions determining precisely when claims for breach of a disability insurance policy accrue for the purpose of the statute of limitations, but the interpretation above is consistent with the way the Fourth Circuit has determined the amount in controversy in similar cases. *See Beaman v. Pacific Mut. Life Inc. Co.*, 369 F.2d 653, 655 (4th Cir. 1966) (the measure of damages for breach of a disability insurance policy "is only the aggregate value of past benefits allegedly wrongly withheld"). Based on the opinion, it does not appear that the Fourth Circuit was applying Maryland law to the policy in *Beaman*. The holding of the case is further distinguishable in that the Court determined the amount in controversy, not the time at which the relevant claims accrued. However, the central question in resolving both issues is when the plaintiff had an actionable claim. In the absence of dispositive Maryland authority, the Fourth Circuit's logic is persuasive.

There is no real factual dispute as to whether Plaintiff discovered that Defendants stopped making monthly benefit payments before July 27, 2008. Plaintiff wrote letters to the President of Trustmark Companies on January 9, 2008, and April 17, 2008. (Pl. Br. Exs. 37, 45.) In the January 9 letter, Plaintiff complained that Defendants were "abandoning the [] commitment represented by the [P]olicy," and that benefits had been "recently discontinued." (*Id.* Ex. 37.) In the April 17 letter, Plaintiff complained that Defendants "have delayed and ultimately denied my benefits." (*Id.* Ex. 45.) No reasonable jury could find that Plaintiff did not discover Defendants' decision to stop paying benefits before July 27, 2008.

Plaintiff argues that "a breach of [a contract for monthly installment payments] requires repudiation of the entire contract," which he argues Defendants did in a September 29, 2008 letter finding "that you do not meet your policy requirements for total disability benefits" and closing the claim "with benefits provided through September 25, 2007." (Pl. Br. at 28-29.) Plaintiff's primary authority for the assertion that an insurer does not breach a disability insurance policy until it repudiates the entire contract is a Supreme Court case that did not apply Maryland law, pre-dates *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and actually stands for the opposite proposition. *See Mobley v. N.Y. Life Ins. Co.*, 295 U.S. 632, 638 (1935) ("Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is *sufficient to constitute a breach* of that provision, but it does not amount to a renunciation or repudiation of the policy." (emphasis added)).[3] Furthermore, this argument fails to consider the nature of disability

---

[3] In addition, even viewed in the light most sympathetic to Plaintiff, the evidence he offers does not support an inference that Defendants ever repudiated the Policy. As in *Mobley*, Defendants' "position appears at all times to have been that, if [P]laintiff was disabled as defined in the [P]olicy, he was entitled to the monthly benefits and waiver of premiums[,] . . . and [t]he evidence gives no support to the claim that [Defendants] disregarded or intended to break [their] promises." (*See, e.g.*, Pl. Br. Exs. 39, 41, 44, 50 (requesting additional information to demonstrate continuing loss).) Defendants have not challenged the validity of the contract or announced an intention not to honor their obligations under the Policy.

6

insurance, under which an insured might be entitled to benefits in non-consecutive months.[4] Therefore, the Court declines to adopt Plaintiff's approach to determining when his claims accrued.[5]

Defendants, on the other hand, argue that all of Plaintiff's claims accrued when Defendants stopped paying Plaintiff's disability benefits in 2007. (Def. Br. at 30.) This argument similarly misconceives the nature of disability insurance. The fact that some of Plaintiff's claims are time barred does not mean that all of them are time barred. Given the nature of disability insurance, Defendants breached the contract each time they failed to pay benefits for a period during which Plaintiff was disabled, as that term is defined in the Policy. *See Mut. Life Ins. Co. of N.Y. v. Moyle*, 116 F.2d 434, 435 (4th Cir. 1940) ("The company is obligated to make these payments only so long as the condition evidencing . . . disability continues; and, as this condition, theoretically at least, may change at any time, it is impossible to say that any controversy exists as to any disability payments except such as have accrued."); *see also Medina v. Provident Life & Accident Ins. Co.*, No. 10 Civ. 3146 (BEL), 2011 WL 249502 (D. Md. Jan. 24, 2011). Each failure to pay monthly benefits—to the extent it is a breach—is a separate and independent breach. Therefore, claims for payments that were not due until after July 27, 2008 are timely.

---

[4] Some courts have reached the opposite conclusion when interpreting contracts that contain provisions very similar to the relevant provisions in the Policy. *See, e.g., Hofkin v. Provident Life & Acc. Ins. Co.*, 81 F.3d 365 (3rd Cir. 1996). In *Hofkin*, the Third Circuit interpreted contractual language very similar to the provisions in this case and held that the claims did not accrue until after the plaintiff was no longer disabled. The Court rejects that interpretation. The Policy provides for continuing payments every 30 days after Plaintiff provided written proof of loss. If the insurer fails to meet those obligations then it has breached the contract, and the insured is not required to wait until the end of his period of disability to bring suit for the denied benefits.

[5] Plaintiff also argues that the claims did not accrue until Defendants declared the claims "terminated," not merely when they stopped making payments. Defendants breached the contract—and the claims accrued—when they failed to pay benefits that were due. Insurers cannot prevent policy holders from suing by continuing in perpetuity to consider the claims open and the denial of benefits preliminary.

### B. Merits

The parties do not appear to dispute when Plaintiff provided information about his condition to Defendants or which information he provided; the correspondence attached to the briefs creates a clear record on this issue. The dispositive question for the claims that are not barred by the statute of limitations is whether Plaintiff provided adequate "continuing proof of loss," as required by the Policy, to entitle him to benefits. If Plaintiff's claims for benefits due before July 28, 2008 were not barred by the statute of limitations, whether Plaintiff adequately provided continuing proof of loss would likely be question for a jury.

However, Defendants had a right under the policy to demand an independent medical examination "as often as reasonably necessary" during the claim. In a letter dated April 22, 2008, Defendants relayed their request that Plaintiff be examined by an independent physician. (Pl. Br. Ex. 47.) "On May 28, 2008, Dr. Curry wrote Defendants and requested that his benefits be paid up to date before an [independent medical examination] was performed." (Pl. Br. at 19.) In a letter dated June 5, 2008, Defendants reiterated their request for an independent medical examination and informed Plaintiff that an examination was scheduled for June 13, 2008. (Pl. Br. Ex. 49.) Plaintiff chose not to attend the examination, because he believed he was due past benefits. (Pl. Br. at 19.) In a letter dated July 31, 2008, Defendants advised Dr. Curry that they were 'unable to accept continued liability at [that] time," citing his refusal to attend the examination. (Pl. Br. Ex. 50.)

Defendants acted within their contractual rights when they denied benefits after Plaintiff failed to attend the June 13, 2008 examination. *Mass. Mut. Life Ins. Co. v. Sinkler*, No. 10 Civ. 0336 (PJM), 2012 WL 3059566, *6 (D. Md. July 24, 2012) (citing *Huntt v. State Farm Mut. Auto. Ins. Co.*, 527 A.2d 1333, 1336 (Md. Ct. Spec. App. 1987)). The only explanation Plaintiff

has offered for his refusal to attend the examination is that Defendants had already breached the Policy by failing to pay benefits for the period beginning in September 2007. Again, this argument fails to account for the nature of a disability insurance contract. Even if Defendants' previous denials were unreasonable, Plaintiff had an ongoing obligation to provide continuing proof of loss in order to be entitled to benefits. Furthermore, no reasonable jury could conclude that Defendants' request for an independent examination—the first such request, which was made after Defendants paid benefits for nearly three years—was a demand for unreasonably frequent examinations. Therefore, Plaintiff has not raised a genuine dispute of material fact in connection with any claims that accrued after June 13, 2008.

## IV. CONCLUSION

Accordingly, an order shall issue GRANTING Defendants' motion for summary judgment (ECF No. 52).

Dated this 15th day of July, 2013

BY THE COURT:

/s/
James K. Bredar
United States District Judge